UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

ROBERT SNYDER,
CDCR #AC-9136,

Plaintiff,

vs.

KATHLEEN ALLISON, CDCR Secretary; A. MONDET, RJD Education Supervisor; C. TISCORNIA, Facility A Librarian, Donovan State Prison,

Defendants.

Case No.: 3:19-cv-01741-LAB-MDD

**ORDER:**

**1) DENYING MOTION FOR TEMPORARY RESTRAINING ORDER PURSUANT TO Fed. R. Civ. P. 65(b) [ECF No. 2]**

**AND**

**2) DISMISSING COMPLAINT FOR FAILING TO STATE A CLAIM PURSUANT TO 28 U.S.C. § 1915A(b)**

## I. Procedural Background

Plaintiff Robert Snyder, currently incarcerated at Richard J. Donovan Correctional Facility ("RJD") in San Diego, California, is proceeding *pro se* in this civil action filed on September 9, 2019, pursuant to 42 U.S.C. § 1983. *See* ECF No. 1 ("Compl."). Unlike most prisoners, Snyder did not file a motion to proceed *in forma pauperis* ("IFP") pursuant to 28 U.S.C. § 1915(a) together with his Complaint, and instead remitted the $400 filing fee required by 28 U.S.C. § 1914(a) to commence a civil action a week later

on September 18, 2019. *See* ECF No. 4, Receipt No. CAS115493. Snyder has also filed a Motion for a Temporary Restraining Order ("TRO") (ECF No. 2), and has since submitted his own separate "Declaration of Details" ("Pl.'s Decl.") and the declaration of a fellow prisoner in support. (*See* ECF Nos. 6, 8.) But the docket has yet to show that Snyder has requested that the Clerk issue a summons, "present[ed] a summons to the clerk for signature and seal" pursuant to Fed. R. Civ. P. 4(b), or has yet executed service of either his Complaint or TRO upon any of the named Defendants. *See Boudette v. Barnette*, 923 F.2d 754, 757 (9th Cir. 1991) (absent a specific request and court order that the U.S. Marshal effect service on their behalf pursuant to Fed. R. Civ. P. 4(c)(3), persons who prepay civil filing fees "remain[] responsible for timely service."); *Omni Capital Int'l, Ltd. v. Rudolf Wolff & Co.*, 484 U.S. 97, 104 (1987) ("Before a . . . court may exercise personal jurisdiction over a defendant, the procedural requirement of service of summons must be satisfied.").

**II. Plaintiff's Allegations**

In both his Complaint, Motion for TRO, and Declaration, Snyder challenges the constitutional sufficiency of the "make–shift 'library'" at RJD and the "craftily arranged moveable barriers" California Department of Corrections and Rehabilitation ("CDCR") and RJD officials have constructed to "thwart" his access to the courts and "research[] claims" in the "3–5 active cases" he has pending. *See* Compl. at 4–6, TRO at 7–8; Pl.'s Decl. at 4–9.

In his Complaint, Snyder contends Kathleen Allison, an Undersecretary employed by the CDCR, A. Mondet, a supervisor of RJD's Education Department, and Chloe Tiscornia, RJD's Facility A Librarian, have all interfered with his ability to litigate his "numerous complaints" by generally impeding his access to computers, providing a "sparse collection of law books" in a small, poorly ventilated and overcrowded space, and by planning to "remove [RJD's] A-Facilit[y's] library & only allow A-Facility inmates access 1 day a week at the Central Library." Compl. at 4–6.

///

In his Declaration, Snyder's allegations are both broader and more narrow. For example, Snyder broadly claims "[t]he amount of deceit invested in keeping inmates from educating themselves in the law (inside CDCR prisons) is staggering," and complains that RJD librarians "pass the buck" and blame their supervisors for "numerous overly-restrictive customs," designed to "cheat[] inmates out of any real chance at obtaining relief." Pl.'s Decl. at 2, 9, 13, 15. But more specifically, Snyder complains that the Facility A library has no bathroom or water fountain, *id.* at 13, does not provide "paper clips, tape or white-out," *id.* at 12, and is often closed due to staff "shortages" and "meetings" which are announced via "cursory memos." *Id.* at 4–5, 14.[1] As a result, Snyder claims inmates with "quickly approaching legal deadline[s]" are required to pre–arrange "ducat pass[es]," *id.* at 5, and must use a "worthless" library paging service when the institution is "supposedly experiencing some sort of security concern" and which permits photocopying, but no access to the "Lexis Nexis© Interactive Database." *Id.* at 7. In sum, Snyder avers these impositions result in insufficient "time inside the library" and access to legal materials that are "either outdated or too non[-]user friendly." *Id.* at 15.

In terms of relief, Snyder seeks an emergency injunction "via a temporary command mechanism  to resolve library restrictions," "permanent injunctive relief via decree to ensure daily library access," and an unspecified amount of monetary damages. Compl. at 8. In his TRO, Snyder more specifically asks that Defendants be "restrained and enjoined from destroying Facility-A's library program at [RJD]." TRO at 14.

## III. Screening of Complaint pursuant to 28 U.S.C. § 1915A

### A. Standard of Review

As a preliminary matter, the Court must conduct an initial review of Snyder's Complaint pursuant to 28 U.S.C. § 1915A, because he is a prisoner and seeks "redress from a governmental entity or officer or employee of a governmental entity." *See* 28

[1] In fact, Snyder claims Defendant Allison's "nickname in CDCR is 'Memo'" because she "has no reservations about creating havoc with her vague departmental memorandums." Pl.'s Decl. at 10–11.

U.S.C. § 1915A(a). Section 1915A "mandates early review—'before docketing [] or [] as soon as practicable after docketing'—for all complaints 'in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity.'" *Chavez v. Robinson*, 817 F.3d 1162, 1168 (9th Cir. 2016). The mandatory screening provisions of § 1915A apply to all prisoners, no matter their fee status, who bring suit against a governmental entity, officer, or employee. *See, e.g. Resnick v. Hayes*, 213 F.3d 443, 446-47 (9th Cir. 2000). "On review, the court shall … dismiss the complaint, or any portion of the complaint," if it "(1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or (2) seeks monetary relief from a defendant who is immune from such relief." *Olivas v. Nevada ex rel. Dept. of Corr.*, 856 F.3d 1281, 1283 (9th Cir. 2017) (quoting 28 U.S.C. § 1915A(b)).

B. Access to the Courts

As summarized above, Snyder contends Defendants are "intentionally hampering" his First Amendment right to access to the courts "by causing physical law library/law materials access to be reduced and restricted down to nearly nothing." Compl. at 4.

Prisoners have a constitutional right of access to the courts. *Lewis v. Casey*, 518 U.S. 343, 346 (1996); *Bounds v. Smith*, 430 U.S. 817, 821 (1977), *limited in part on other grounds by Lewis*, 518 U.S. at 354. Because states must ensure indigent prisoners meaningful access to the courts, *Bounds* held that prison officials were required to provide either: (1) adequate law libraries, or (2) adequate assistance from persons trained in the law. *Bounds*, 430 U.S. at 828. *Bounds* was interpreted to establish "core requirements," and a prisoner alleging deprivation of those core requirements was *not* required to also allege actual injury in order to a state constitutional claim. *See e.g., Sands v. Lewis*, 886 F.2d 1166, 1171 (9th Cir. 1989).

However, *Lewis* abolished that approach in 1996; and ever since, in order to state a claim of a denial of the right to access the courts, a prisoner must establish that he has suffered "actual injury," a jurisdictional requirement derived from the standing doctrine. *Lewis*, 518 U.S. at 349. An "actual injury" is "actual prejudice with respect to

contemplated or existing litigation, such as the inability to meet a filing deadline or to present a claim." *Id.* at 348 (citation and internal quotations omitted). The right of access does *not* require the State to "enable the prisoner to discover grievances," or even to "litigate effectively once in court." *Id.* at 354; *see also Jones v. Blanas*, 393 F.3d 918, 936 (9th Cir. 2004) (defining actual injury as the "inability to file a complaint or defend against a charge"). Instead, *Lewi*s holds:

> [T]he injury requirement is not satisfied by just any type of frustrated legal claim ... *Bounds* does not guarantee inmates the wherewithal to transform themselves into litigating engines capable of filing everything from shareholder derivative actions to slip-and-fall claims. The tools it requires to be provided are those that the inmates need in order to attack their sentences, directly or collaterally, and in order to challenge the conditions of their confinement. Impairment of any other litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration.

*Id.* at 346; *see also Spence v. Beard*, No. 2:16-CV-1828 KJN P, 2017 WL 896293, at *2-3 (E.D. Cal. Mar. 6, 2017). Indeed, the failure to allege an actual injury is "fatal." *Alvarez v. Hill*, 518 F.3d 1152, 1155 n.1 (9th Cir. 2008) ("Failure to show that a 'non-frivolous legal claim had been frustrated' is fatal.") (quoting *Lewis*, 518 U.S. at 353 & n.4).

In addition to alleging an "actual injury," Snyder must also plead facts sufficient to describe the "non-frivolous" or "arguable" nature of underlying claim he contends was lost as result of Defendants' actions. *Christopher v. Harbury*, 536 U.S. 403, 413-14 (2002). The nature and description of the underlying claim must be set forth in the pleading "as if it were being independently pursued." *Id.* at 417.

Snyder contends he is on a "quest to reverse his convictions" and "at any time has between 3–5 active cases" pending, yet he "gets less than 4 hours per week of meaningful library access." Compl. at 4. He further claims "plans are underway … to remove [RJD's] A-Facility['s] library & only allow A-Facility inmates 1 day a week at the Central Library." *Id.* at 6. Critically, however, Snyder does not allege any "actual injury" or identify any "prejudice with respect to contemplated or existing litigation, such as the inability to meet

a filing deadline or to present a claim." *Lewis*, 518 U.S. at 348.

Snyder attaches exhibits to his Complaint, including a list of eight separate petitions for writ of mandate, writs of habeas corpus, and another § 1983 civil rights complaint and TRO he has filed in San Luis Obispo, Los Angeles, and Kings County Superior Courts, the California and U.S. Supreme Court, and in the Central District of California between August 2016 and October 2018.[2] Compl. at 27–28. He does not, however, describe the non–frivolous or arguable nature of any of the underlying claims in these matters, admits four of these cases remained pending as of November 7, 2018, *id.*, and fails to contend that any of the others were dismissed because he was "[u]nab[le] to meet a filing deadline or to present a claim," *Lewis*, 518 U.S. at 348, as the result of any act or omission on the part of Defendant Allison, Mondet, or Tiscornia. *See Iqbal*, 556 U.S. at 676 ("[A] plaintiff must plead that each Government–official defendant, through [his or her] own individual actions, has violated the Constitution."); *Victoria v. City of San Diego*, 326 F. Supp. 3d 1003, 1013 (S.D. Cal. 2018).

The Court also notes Snyder concedes he has filed "numerous actions for other prisoners in various venues," Compl. at 28, but he may not assert First Amendment access to courts claims on behalf of other inmates. *See Blaisdell v. Frappiea*, 729 F.3d 1237, 1244 (9th Cir. 2013). "For there to be a judicially cognizable injury, "the party before [the court] must seek a remedy for a *personal* and tangible harm." *Hollingsworth v. Perry*, __U.S. __, 133 S. Ct. 2652, 2661 (2013) (emphasis added); *see also New York v. Ferber*, 458 U.S. 747, 767 (1982) (describing "the personal nature of constitutional rights" as a "cardinal principle[ ] of our constitutional order"); *cf. Spence v. Beard*, No. 2:16-CV-1828 KJN P, 2017 WL 896293, at *3 (E.D. Cal. Mar. 6, 2017) (dismissing pro

---

[2] While "it is not the Court's duty," when screening a complaint pursuant to 28 U.S.C. § 1915(e) and § 1915A "to wade through exhibits to determine whether cognizable claims have been stated," *Woodrow v. Cty. of Merced*, No. 1:13–cv–01505–AWI, 2015 WL 164427, at *4 (E.D. Cal. Jan 13, 2015), the Court does so here in light of Snyder's pro se status and its obligation to construe his pleading in the light most favorable to him. *See Resnick*, 213 F.3d at 447; *Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010) (holding that pro se complaints should continue to be liberally construed after *Iqbal*).

se prisoner's attempt to bring class action challenging content of CDCR's law library).

Thus, as currently pleaded, the gravamen of Snyder's claims center on the adequacy of RJD's A-Facility library itself, and it focuses on the limitations incarceration places on the ability of RJD prisoners like him to litigate freely. For example, Snyder complains that RJD's library facilities are "makeshift," "poorly ventilated," "overcrowded," and comprised of a "sparse collection of law books" which are inadequate to assist him in "researching claims." He further contends the library is manned by staff who "lie" about "speculative security concerns" during periods of "modified programming" and are "no way trained in law," *see* Compl. at 4, 10, 6, and he objects to RJD's system of prioritizing access for inmates with a "priority ducat pass" and "express court deadlines." *Id.* at 8, 10–11. But these types of generalized allegations fail to state a legally plausible access to courts claim under *Lewis* because "an inmate cannot establish relevant actual injury simply by establishing that his prison's law library or legal assistance program is subpar in some theoretical sense." *Lewis*, 518 U.S. at 351. "[P]rison law libraries and legal assistance programs are not ends in themselves," and *Lewis* makes clear that courts must "leave it to prison officials to determine how best to ensure that inmates … have a reasonably adequate opportunity to file nonfrivolous legal claims challenging their convictions or conditions of confinement." *Id.* at 356. "[I]t is that capability, rather than the capability of turning pages in a law library that is the touchstone." *Id.* at 357.

For these reasons, the Court finds Snyder's Complaint fails to state a claim upon which § 1983 relief can be granted, and must therefore be dismissed sua sponte and in its entirety pursuant to 28 U.S.C. § 1915A(b). *See Olivas*, 856 F.3d at 1283.

**IV. Motion for Temporary Restraining Order**

As noted above, Snyder alleges he currently "gets less than 4 hours per week of meaningful library access," and that "plans are underway … to remove A-Facility['s] Library & only allow A-Facility inmates access 1 day a week at the Central Library." Compl. at 4, 6. His Complaint seeks "emergency relief via a temporary command

mechanism to resolve library restrictions." *Id.* at 8. In his TRO, however, Snyder specifically requests that Defendants be more specifically enjoined "from destroying Facility-A's library program." *See* TRO at 14.

A. Standard of Review

Procedurally, a federal district court may issue emergency injunctive relief only if it has personal jurisdiction over the parties and subject matter jurisdiction over the lawsuit. *See Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 350 (1999) (noting that one "becomes a party officially, and is required to take action in that capacity, only upon service of summons or other authority-asserting measure stating the time within which the party served must appear to defend."). The court may not attempt to determine the rights of persons not before it. *See, e.g.*, *Hitchman Coal & Coke Co. v. Mitchell*, 245 U.S. 229, 234-35 (1916); *Zepeda v. INS*, 753 F.2d 719, 727-28 (9th Cir. 1983); *Lathrop v. Unidentified, Wrecked & Abandoned Vessel*, 817 F. Supp. 953, 961 (M.D. Fl. 1993); *Kandlbinder v. Reagan*, 713 F. Supp. 337, 339 (W.D. Mo. 1989); *Suster v. Marshall*, 952 F. Supp. 693, 701 (N.D. Ohio 1996); *see also Califano v. Yamasaki*, 442 U.S. 682, 702 (1979) (injunctive relief must be "narrowly tailored to give only the relief to which plaintiffs are entitled"). Under Federal Rule of Civil Procedure 65(d)(2) an injunction binds only "the parties to the action," their "officers, agents, servants, employees, and attorneys," and "other persons who are in active concert or participation." Fed. R. Civ. P. 65(d)(2)(A)-(C).

The substantive purpose of a TRO is to preserve the status quo before a preliminary injunction hearing may be held; its provisional remedial nature is designed merely to prevent irreparable loss of rights prior to judgment. *Granny Goose Foods, Inc. v. Brotherhood of Teamsters & Auto Truck Drivers*, 415 U.S. 423, 439 (1974). But the legal standard that applies to a motion for a TRO is the same as a motion for a preliminary injunction. *See Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001).

///

"A preliminary injunction is an extraordinary remedy never awarded as of right, and the grant of a preliminary injunction is a matter committed to the discretion of the trial judge[.]" *Epona v. Cty. of Ventura*, 876 F.3d 1214, 1227 (9th Cir. 2017) (internal quotation marks and citations omitted). "'A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Glossip v. Gross*, __ U.S. __, 135 S. Ct. 2726, 2736-37 (2015) (*quoting Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 20 (2008)). "Under *Winter*, plaintiffs must establish that irreparable harm is likely, not just possible, in order to obtain a preliminary injunction." *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131 (9th Cir. 2011).

In addition, the PLRA requires prisoners to satisfy additional requirements when seeking preliminary injunctive relief against prison officials:

> Preliminary injunctive relief must be narrowly drawn, extend no further than necessary to correct the harm the court finds requires preliminary relief, and be the least intrusive means necessary to correct that harm. The court shall give substantial weight to any adverse impact on public safety or the operation of a criminal justice system caused by the preliminary relief and shall respect the principles of comity set out in paragraph (1)(B) in tailoring any preliminary relief.

18 U.S.C. § 3626(a)(2).

Section 3626(a)(2) places significant limits upon a court's power to grant preliminary injunctive relief to inmates, and "operates simultaneously to restrict the equity jurisdiction of federal courts and to protect the bargaining power of prison administrators—no longer may courts grant or approve relief that binds prison administrators to do more than the constitutional minimum." *Gilmore v. People of the State of California*, 220 F.3d 987, 998-99 (9th Cir. 2000).

B. Discussion

First, the Court notes that nothing in its docket shows Snyder has effected service of summons, his Complaint, or his TRO upon any of the named Defendants. *See* Fed. R.

Civ. P. 4(c)(1) ("A summons must be served with a copy of the complaint. The plaintiff is responsible for having the summons and complaint served within the time allowed by Rule 4(m) and must furnish the necessary copies to the person who makes service."); Fed. R. Civ. P. 4(l) ("Unless service is waived, proof of service must be made to the court."); Fed. R. Civ. P. 4(k)(1) ("Serving a summons or filing a waiver of service establishes personal jurisdiction over a defendant."). Unless and until Snyder demonstrates he has properly served the Defendants in this case, the Court lacks personal jurisdiction over them, and even if his Complaint adequately pleaded a plausible access to courts claim, the Court could not grant the injunctive relief he seeks. *See* Fed. R. Civ. P. 65(d)(2); *Murphy Bros., Inc*., 526 U.S. at 350; *Zepeda*, 753 F.2d at 727-28.

Second, the Court may issue a TRO without written or oral notice to the adverse party only if "specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition," and the movant "certifies in writing any efforts made to give notice and the reasons why it should not be required." Fed. R. Civ. P. 65(b)(1)(A), (B). Although the restrictions imposed are stringent, they "reflect the fact that our entire jurisprudence runs counter to the notion of court action taken before reasonable notice and an opportunity to be heard has been granted both sides of a dispute." *Granny Goose*, 415 U.S. at 438-39. Nowhere in either his Complaint or his TRO does Snyder attest to having made any effort to give notice to the Defendants of his suit or his Motion for TRO, and nowhere does he "clearly show" through "specific facts" why such notice is not required. *See* Fed. R. Civ. P. 65(b)(1)(A), (B).

Nor has Snyder demonstrated he will suffer "immediate and irreparable injury, loss, or harm" in the absence of injunctive relief. *See Winter*, 555 U.S. at 20; *Alliance for the Wild Rockies*, 632 F.3d at 1131. An adequate showing of irreparable harm is the "'single most important prerequisite for the issuance of a [TRO].'" *Universal Semiconductor, Inc. v. Tuoi Vo*, No. 5:16-CV-04778-EJD, 2016 WL 9211685, at *2 (N.D. Cal. Nov. 29, 2016) (quoting *Freedom Holdings, Inc. v. Spitzer*, 408 F.3d 112, 114

(2d Cir. 2005)). To successfully make that showing, the moving party must "demonstrate that irreparable injury is *likely* in the absence of an injunction." *Winter*, 555 U.S. at 22 (emphasis original). A TRO ordered on anything less is "inconsistent" with the "characterization of injunctive relief as an extraordinary remedy...." *Id.*

In light of the Court's determination that Snyder has failed to allege any viable access to courts claim, he is unlikely to succeed on the merits, and consequently has not established he will be irreparably harmed. *See Winter*, 555 U.S. at 22; *Glossip*, 135 S. Ct. at 2736-37. Accordingly, the Court **DENIES** Snyder's Motion for TRO and need not consider any remaining *Winter* factors. *See Pimentel v. Dreyfus*, 670 F.3d 1096, 1111 (9th Cir. 2012) ("[A]t an irreducible minimum the moving party must demonstrate a fair chance of success on the merits, or questions serious enough to require litigation." (internal quotation marks and citation omitted)); *see also Williams v. Duffy*, No. 18-CV-06921-BLF, 2019 WL 95924, at *3 (N.D. Cal. Jan. 3, 2019) (denying prisoner's TRO based in conjunction with sua sponte screening and dismissal of complaint for failure to state a claim pursuant to 28 U.S.C. § 1915A).

## V.     Conclusion and Orders

For the reasons explained, the Court **DISMISSES** Snyder's Complaint sua sponte failing to state a claim upon which § 1983 relief can be granted pursuant to 28 U.S.C. § 1915A(b)(1) and **DENIES** his Motion for a Temporary Restraining Order (ECF No. 2) without prejudice pursuant to Fed. R. Civ. P. 65(b).

Snyder may file an Amended Complaint on or before **January 21, 2020**. His Amended Complaint must contain Civil Case No. 19-cv-01741-LAB-MDD in its caption, must cure all the deficiencies of pleading noted, and must be complete by itself without reference to his original pleading. Any Defendants not named and any claim not re-alleged in his Amended Complaint will be considered waived. *See* S.D. Cal. CivLR 15.1; *Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc.*, 896 F.2d 1542, 1546 (9th Cir. 1989) ("[A]n amended pleading supersedes the original."); *Lacey v. Maricopa Cnty.*, 693

///

F.3d 896, 928 (9th Cir. 2012) (noting that claims dismissed with leave to amend which are not re-alleged in an amended pleading may be "considered waived if not repled.").[3]

If Snyder fails to file an Amended Complaint by **January 21, 2020**, the Court will enter a final Order dismissing this civil action based both on his failure to state a claim upon which relief can be granted pursuant to 28 U.S.C. § 1915A(b), and his failure to prosecute in compliance with a court order requiring amendment. *See Lira v. Herrera*, 427 F.3d 1164, 1169 (9th Cir. 2005) ("If a plaintiff does not take advantage of the opportunity to fix his complaint, a district court may convert the dismissal of the complaint into dismissal of the entire action.").

**IT IS SO ORDERED**.

Dated: December 5, 2019

Hon. Larry Alan Burns
Chief United States District Judge

---

[3] Should Snyder timely file an Amended Complaint, that pleading will also be subject to an initial sua sponte screening pursuant to 28 U.S.C. § 1915A. *See Chavez*, 817 F.3d at 1168. The Court will toll Rule 4(m)'s service clock while it conducts that screening. *See Butler v. Nat'l Cmty. Renaissance of California*, 766 F.3d 1191, 1204 n.8 (9th Cir. 2014) (noting that "[o]ther federal circuit courts of appeals have held that the [90]–day service period is tolled until the court screens a plaintiff's in forma pauperis complaint and authorizes service of process") (citing *Robinson v. Clipse*, 602 F.3d 605, 608 (4th Cir. 2010); *Urrutia v. Harrisburg Cnty. Police Dep't*, 91 F.3d 451, 459 (3d Cir. 1996)). Should Snyder's Amended Complaint survive initial screening, the Court will then direct the Clerk of the Court to issue a summons pursuant to Fed. R. Civ. P. 4(b). Because Snyder is not proceeding IFP, however, he is not automatically entitled to U.S. Marshal service pursuant to 28 U.S.C. § 1915(d), and will remain "responsible for having the summons and [his amended] complaint served" within 90 days. *See* Fed. R. Civ. P. 4(c)(1), (m).