UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROBERT SNYDER, CDCR #AC-9136,<br><br>                                  Plaintiff,<br><br>vs.<br><br>KATHLEEN ALLISON; A. MONDET; C. TISCORNIA,<br><br>                                  Defendants. | Case No.: 3:19-cv-01741-LAB-DEB<br><br>**ORDER DISMISSING AMENDED COMPLAINT FOR FAILING TO STATE A CLAIM PURSUANT TO 28 U.S.C. § 1915A** |

**I.      Procedural Background**

On September 9, 2019, Plaintiff Robert Snyder, currently incarcerated at Richard J. Donovan Correctional Facility ("RJD") in San Diego, California and proceeding *pro se*, filed this civil action pursuant to 42 U.S.C. § 1983 and a temporary restraining order ("TRO"). *See* ECF No. 1 ("Compl."). Snyder paid the $400 filing fee required by 28 U.S.C. § 1914(a) on September 18, 2019. *See* ECF No. 4, Receipt No. CAS115493. The Court denied the TRO and dismissed the Complaint on December 5, 2019 because Plaintiff had failed to state a claim pursuant to 28 U.S.C. § 1915A(b). *See* ECF No. 9. Plaintiff was given leave to amend, and on April 6, 2020, Plaintiff filed an Amended Complaint. *See* ECF No. 21 ("Am. Comp.")

/ / /

## II. Plaintiff's Allegations

In his Amended Complaint, Snyder again contends Kathleen Allison, an Undersecretary employed by the CDCR, A. Mondet, a supervisor of RJD's Education Department, and Chloe Tiscornia, RJD's Facility A Librarian, have all interfered with his ability to litigate his complaints against CDCR employees by generally impeding his access to computers, providing deficient libraries, ordering the closure of A-Facilities library, limiting time inside the library, creating inflexible schedules, refusing to respond to inmates requests, and arbitrarily preventing inmates from copying pages out of law books. Am. Compl. at 4-13. Specifically, he alleges that Allison "maintains vague library policies . . . that make litigating difficult," *id.* at 5, the library is both "overly small" which results in "strictly limited" attendance at the library, *id.*, and "deficient," which helps the California Department of Corrections and Rehabilitation ("CDCR") "reduce its overall liability." *Id.* at 4. He claims Mondet "ordered closure of A-facilities library between late August and early September to comply with CDCR's 'non-designated' policy [which] resulted in a one-month . . . gap in our library access," *id.* at 7, "pushe[d] into effect various unwritten procedures which limit time in their central library to four hours of physical access maximum," *id.*, and that she "maintains a sparse collection of outdated books." *Id.* He further contends Mondet "doesn't facilitate entrance into the library," and claims "there's at all times no less than 4 obstacles standing in the way of physical access," *id.* at 9, and that Mondet "routinely ordered unexplained library closures of A-Facilities library" between February and September of 2019. *Id.* As to Tiscornia, Snyder alleges she prohibited tutoring and "threatened to cancel . . . priority legal user (PLU) status for seeking advice from other inmates," *id*. at 11, used pretextual staff shortages to justify closing the library, *id.*, and "sabotaged inmate's "quiet study by sending her clerks to enforce her arbitrary set of rules." *Id.* at 13. He also brings a new allegation against Tiscornia for retaliation, claiming that Tiscornia "retaliated specifically against Plaintiff with a 6/24/20 disciplinary report to punish him for complaining to her supervisor about the lack of books

///

in A-Facilities library room," and that "shortly after requesting access to CALJUR, Plaintiff was issued another RVR by Mondet's assistant." *Id.*

Snyder asks for "declaratory relief," that Defendants be held liable for costs and fees or any "prospective damages," and "any or all other equitable relief deemed appropriate by this Court. *Id.* at 14.

**III.   Screening of Complaint pursuant to 28 U.S.C. § 1915A**

A.   Standard of Review

As a preliminary matter, the Court must conduct an initial review of Snyder's Complaint pursuant to 28 U.S.C. § 1915A, because he is a prisoner and seeks "redress from a governmental entity or officer or employee of a governmental entity." *See* 28 U.S.C. § 1915A(a). Section 1915A "mandates early review—'before docketing [] or [] as soon as practicable after docketing'—for all complaints 'in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity.'" *Chavez v. Robinson*, 817 F.3d 1162, 1168 (9th Cir. 2016). The mandatory screening provisions of § 1915A apply to all prisoners, no matter their fee status, who bring suit against a governmental entity, officer, or employee. *See, e.g. Resnick v. Hayes*, 213 F.3d 443, 446-47 (9th Cir. 2000). "On review, the court shall … dismiss the complaint, or any portion of the complaint," if it "(1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or (2) seeks monetary relief from a defendant who is immune from such relief." *Olivas v. Nevada ex rel. Dept. of Corr.*, 856 F.3d 1281, 1283 (9th Cir. 2017) (quoting 28 U.S.C. § 1915A(b)).

B.   Access to the Courts

As he did in his original complaint, Snyder contends Defendants are "(1) block[ing] Plaintiff's access to courts and (2) erect[ing] barriers to physical, meaningful access to is already deficient law library facility," thereby violating his First and Fourteenth Amendment right to access to the courts. Am. Compl. at 3.

Prisoners have a constitutional right of access to the courts. *Lewis v. Casey*, 518 U.S. 343, 346 (1996); *Bounds v. Smith*, 430 U.S. 817, 821 (1977), *limited in part on other*

*grounds by Lewis*, 518 U.S. at 354. In order to state a claim of a denial of the right to access the courts, a prisoner must establish that he has suffered "actual injury," a jurisdictional requirement derived from the standing doctrine. *Lewis*, 518 U.S. at 349. An "actual injury" is "actual prejudice with respect to contemplated or existing litigation, such as the inability to meet a filing deadline or to present a claim." *Id.* at 348 (citation and internal quotations omitted). The right of access does *not* require the State to "enable the prisoner to discover grievances," or even to "litigate effectively once in court." *Id.* at 354; *see also Jones v. Blanas*, 393 F.3d 918, 936 (9th Cir. 2004) (defining actual injury as the "inability to file a complaint or defend against a charge"). Instead, *Lewi*s holds:

> [T]he injury requirement is not satisfied by just any type of frustrated legal claim . . . . *Bounds* does not guarantee inmates the wherewithal to transform themselves into litigating engines capable of filing everything from shareholder derivative actions to slip-and-fall claims. The tools it requires to be provided are those that the inmates need in order to attack their sentences, directly or collaterally, and in order to challenge the conditions of their confinement. Impairment of any other litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration.

*Id.* at 346; *see also Spence v. Beard*, No. 2:16-CV-1828 KJN P, 2017 WL 896293, at *2-3 (E.D. Cal. Mar. 6, 2017). Indeed, the failure to allege an actual injury is "fatal." *Alvarez v. Hill*, 518 F.3d 1152, 1155 n.1 (9th Cir. 2008) ("Failure to show that a 'non-frivolous legal claim had been frustrated' is fatal.") (quoting *Lewis*, 518 U.S. at 353 & n.4).

In addition to alleging an "actual injury," Snyder must also plead facts sufficient to describe the "non-frivolous" or "arguable" nature of underlying claim he contends was lost as result of Defendants' actions. *Christopher v. Harbury*, 536 U.S. 403, 413-14 (2002). The nature and description of the underlying claim must be set forth in the pleading "as if it were being independently pursued." *Id.* at 417. In *Christopher*, the Supreme Court identified two types of access to courts claims, "forward-looking claims," in which a Plaintiff contends that official action is currently preventing him from pursuing his claims in court, and "backward-looking claims," in which a Plaintiff contends that official action

prevented him from pursuing his claims in court and he has now lost the opportunity to do so. *Christopher*, 536 U.S. at 413-14.

Snyder contends that "[w]hen a corrections [department] erects barriers to physical access of its library, it constitutes an injury per se." Am. Compl. at 4. He also states that he "continues to suffer the brutal effects of being lied to as to why sufficient access to the library is not available despite multiple pending legal actions that need factual and legal development," and that he has "a dozen more cases he needs to file but cannot because he must de-prioritize non-emergency claims." *Id.* As in his original complaint, however, Snyder does not allege any "actual injury" with regard to his forward-looking claims because his vague description of "multiple pending legal actions that need factual and legal development" is not sufficient to establish they are "non-frivolous" or "arguable." *Christopher*, 536 at 413-14. And although he claims some of these potential cases "are already in default of the applicable statute of limitations," this is insufficient to establish "prejudice with respect to contemplated or existing litigation" because Snyder does not explain the "non-frivolous" or "arguable" nature of his backward-looking claims either. *See Lewis* 518 U.S. at 348; *Christopher*, 536 U.S. at 413-14.

The claims in Snyder's Amended Complaint are essentially the same as those in his original complaint, that is, that RJD's A-Facility library is inadequate, he is unable to litigate freely due to the limitations placed on him as a result of his incarceration, and that staff are both unqualified and are enforcing library regulations too vigorously. For example, Snyder complains that RJD's library facilities are "overly small" which is "a barrier per se as it quickly becomes crowded so attendance is always strictly limited," and contains only "a sparse collection of outdated books." Am. Compl. at 5, 7. He also contends the CDCR "uses deficient libraries to reduce its overall liability" and that Defendant Allison "encourages compliance at all CDCR prisons with customized policies designed to make successful litigation against CDCR employees impossible," *id.* at 5, Defendant Mondet "is not qualified to be a principal of an education organization" and "created an inflexible schedule to CDCR's advantage [which] conflict[ed] with Plaintiff's Catholic

church schedule," *id*. at 6, 8, and Defendant Tiscornia "made announcements regarding staff shortages that would lead to closures," and "personally ordered RJD maintenance to remove A-Facilities drinking fountain to discourage us." *Id.* at 11-12. But as this Court explained to Snyder in its December 5, 2019 Order dismissing his original complaint, "these types of generalized allegations fail to state a legally plausible access to courts claim under *Lewis* because 'an inmate cannot establish relevant actual injury simply by establishing that his prison's law library or legal assistance program is subpar in some theoretical sense.'" *See* ECF No. 9 at 7, citing *Lewis*, 518 U.S. at 351. "[P]rison law libraries and legal assistance programs are not ends in themselves," and *Lewis* makes clear that courts must "leave it to prison officials to determine how best to ensure that inmates…have a reasonably adequate opportunity to file nonfrivolous legal claims challenging their convictions or conditions of confinement." *Id.* at 356. "[I]t is that capability, rather than the capability of turning pages in a law library that is the touchstone." *Id.* at 357.

### C. Retaliation

Snyder also makes a new allegation of retaliation in his Amended Complaint. He claims Defendant Tiscornia retaliated against him for complaining to her supervisor by writing a disciplinary report on him on June 24, 2019[1], and that the timing of the report was "very suspicious." Am. Compl. at 13 ¶ 24. To state a valid First Amendment retaliation claim, a Snyder must assert: (1) a state actor took some adverse action against him, (2) the adverse action was taken because he engaged in some protected conduct, (3) the state actor's acts "would chill or silence a person of ordinary firmness from future First Amendment activities," and (4) the adverse action "did not reasonably advance a legitimate correctional goal." *Rhodes v. Robinson*, 408 F.3d 559, 567-68 (9th Cir. 2005) (internal

---

[1] Snyder alleges the incident with Tiscornia occurred on June 24, 2020, but he filed his Amended Complaint on April 20, 2020. *See* Am. Compl. at 1, 13. The Court will therefore assume Snyder meant to allege the incident occurred on June 24, 2019, not June 24, 2020.

quotation marks and emphasis omitted). "[A] plaintiff who fails to allege a chilling effect may still state a claim if he alleges he suffered some other harm," *Brodheim v. Cry*, 584 F.3d 1262, 1269 (9th Cir. 2009), that is "more than minimal." *Rhodes*, 408 F.3d at 568 n.11. Although Snyder alleges a state actor (Tiscornia) took some adverse action against him (filed a disciplinary report), because he engaged in protected conduct (to punish him for complaining to her supervisor), he has not made a sufficient factual showing that Tiscornia's actions "would chill or silence a person of ordinary firmness from future First Amendment activities." *Rhodes*, 408 F.3d at 568. Other than claiming broadly that Tiscornia issued a disciplinary report against him on 6/24/19, Snyder does not provide any further factual enhancement to plausibly show how Tiscornia's actions would chill or silence a person of ordinary firmness from future protected conduct, or that he suffered some other non-minimal harm as a result of her report. *See Brodheim*, 584 F.3d at 1269; *Rhodes*, 408 F.3d at 568 n.11. Further, Snyder has not made a sufficient factual showing that Tiscornia's actions "did not reasonably advance a legitimate correctional goal." *Rhodes*, 408 F.3d at 567-68. "[T]he plaintiff must allege 'that the prison authorities' retaliatory action did not advance legitimate goals of the correctional institution....'" *Watison v. Carter*, 668 F.3d 1108, 1114 (9th Cir. 2012) (quoting *Rizzo v. Dawson*, 778 F.2d 527, 532 (9th Cir. 1985)). "A plaintiff successfully pleads this element by alleging, in addition to a retaliatory motive, that the defendant's actions were "arbitrary and capricious," *id.* at 1115, or that they were "'unnecessary to the maintenance of order in the institution.'" *Id.* (quoting *Franklin v. Murphy*, 745 F.2d 1221, 1230 (9th Cir. 1984)). Here again, Snyder claims only broadly, and without detail, that Tiscornia issued a disciplinary report against him on 6/24/19 in order to punish him for complaining to her supervisor about the lack of books in A-Facility library. *See* Am. Comp. at 13 ¶ 24. He includes no additional facts, however, to plausibly show that Tiscornia's report was arbitrary or capricious, or that it was otherwise unnecessary to the maintenance of order in the facility. *Cf. Watison*, 668 F.3d at 1115 (finding prisoner's claims of a *false* disciplinary report, coupled with *false* statements to the parole board, and an "angry" threat to the prisoner that

his grievance would not "stand" sufficient to allege the "absence of a legitimate penological reason for the alleged adverse actions.").

For the reasons discussed above, the Court finds Snyder's Amended Complaint fails to state a claim upon which § 1983 relief can be granted, and must therefore be dismissed sua sponte and in its entirety pursuant to 28 U.S.C. § 1915A(b). *See Olivas*, 856 F.3d at 1283.[2]

## IV. Conclusion and Orders

For the reasons explained, the Court **DISMISSES** Snyder's Amended Complaint [ECF No. 21] sua sponte for failing to state a claim upon which § 1983 relief can be granted pursuant to 28 U.S.C. § 1915A(b)(1).

Snyder may file a Second Amended Complaint on or before **September 3, 2020**. His Second Amended Complaint must contain Civil Case No. 19-cv-01741-LAB-DEB in its caption, must cure all the deficiencies of pleading noted, and must be complete by itself without reference to his original pleading. Any Defendants not named and any claim not re-alleged in his Amended Complaint will be considered waived. *See* S.D. Cal. CivLR 15.1; *Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc.*, 896 F.2d 1542, 1546 (9th Cir. 1989) ("[A]n amended pleading supersedes the original."); *Lacey v. Maricopa Cnty.*, 693 F.3d 896, 928 (9th Cir. 2012) (noting that claims dismissed with leave to amend which are not re-alleged in an amended pleading may be "considered waived if not repled.").[3]

---

[2] Snyder also cites to 42 USC § 1985 (the Ku Klux Klan Act) and§ 1986 (neglecting to prevent a violation of § 1985). Section 1985 proscribes conspiracies to interfere with an individual's civil rights. To state a cause of action under § 1985, a plaintiff must allege: (1) a conspiracy, (2) to deprive any person or class of persons of the equal protection of the laws, (3) an act by one of the conspirators in furtherance of the conspiracy, and (4) a personal injury, property damage or deprivation of any right or privilege of a citizen of the United States. *Gillispie v. Civiletti*, 629 F.2d 637, 641 (9th Cir. 1980); *Griffin v. Breckenridge*, 403 U.S. 88, 102-03 (1971). Section 1985 applies only where there is a racial or other class-based discriminatory animus behind the conspirators' actions. *Sever v. Alaska Pulp Corp.*, 978 F.2d 1529, 1536 (9th Cir. 1992). Snyder makes no factual allegations to plausibly suggest Defendants unlawfully conspired to deny him equal protection based on race, which is what 28 U.S.C. § 1985 requires.

[3] Should Snyder timely file a Second Amended Complaint, that pleading will also be subject to an initial sua sponte screening pursuant to 28 U.S.C. § 1915A. *See Chavez*, 817 F.3d at 1168. The Court will toll

If Snyder fails to file a Second Amended Complaint by **September 3, 2020**, the Court will enter a final Order dismissing this civil action based both on his failure to state a claim upon which relief can be granted pursuant to 28 U.S.C. § 1915A(b), and his failure to prosecute in compliance with a court order requiring amendment. *See Lira v. Herrera*, 427 F.3d 1164, 1169 (9th Cir. 2005) ("If a plaintiff does not take advantage of the opportunity to fix his complaint, a district court may convert the dismissal of the complaint into dismissal of the entire action.").

**IT IS SO ORDERED**.

Dated: July 31, 2020

*[signature]*

Hon. Larry Alan Burns
Chief United States District Judge

---

Rule 4(m)'s service clock while it conducts that screening. *See Butler v. Nat'l Cmty. Renaissance of California*, 766 F.3d 1191, 1204 n.8 (9th Cir. 2014) (noting that "[o]ther federal circuit courts of appeals have held that the [90]–day service period is tolled until the court screens a plaintiff's in forma pauperis complaint and authorizes service of process") (citing *Robinson v. Clipse*, 602 F.3d 605, 608 (4th Cir. 2010); *Urrutia v. Harrisburg Cnty. Police Dep't*, 91 F.3d 451, 459 (3d Cir. 1996)). Should Snyder's Second Amended Complaint survive initial screening, the Court will then direct the Clerk of the Court to issue a summons pursuant to Fed. R. Civ. P. 4(b). Because Snyder is not proceeding IFP, however, he is not automatically entitled to U.S. Marshal service pursuant to 28 U.S.C. § 1915(d), and will remain "responsible for having the summons and [his amended] complaint served" within 90 days. *See* Fed. R. Civ. P. 4(c)(1), (m).