UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| ROBERT SNYDER,<br>CDCR #AC-9136,<br><br>Plaintiff,<br><br>vs.<br><br>KATHLEEN ALLISON, et al.,<br><br>Defendants. | Case No.:  3:19-cv-01741-LAB-MDD<br><br>**ORDER DISMISSING SECOND AMENDED COMPLAINT FOR FAILING TO STATE A CLAIM PURSUANT TO 28 U.S.C. § 1915A** |

## I.    Procedural Background

On September 9, 2019, Plaintiff Robert Snyder, currently incarcerated at Richard J. Donovan Correctional Facility ("RJD") in San Diego, California and proceeding *pro se*, filed this civil action pursuant to 42 U.S.C. § 1983 and a temporary restraining order ("TRO"). *See* ECF No. 1 ("Compl."). Snyder paid the $400 filing fee required by 28 U.S.C. § 1914(a) on September 18, 2019. *See* ECF No. 4, Receipt No. CAS115493. The Court denied the TRO and dismissed the Complaint on December 5, 2019 because Plaintiff had failed to state a claim pursuant to 28 U.S.C. § 1915A(b). *See* ECF No. 9. Plaintiff was given leave to amend, and on April 6, 2020, Plaintiff filed an Amended Complaint. *See* ECF No. 21.

On August 3, 2020, the Court dismissed Plaintiff's First Amended Complaint ("FAC") because Plaintiff had again failed to state a claim pursuant to 28 U.S.C. § 1915A(b). *See* ECF No. 24. Plaintiff was given until November 2, 2020 to file a Second Amended Complaint. *Id.* On October 29, 2020, Plaintiff filed a Second Amended Complaint ("SAC"). *See* ECF No. 28.

## II.    Plaintiff's Allegations

In his SAC, Snyder repeats the allegations he made in his original Complaint and in his FAC against Defendants Kathleen Allison, Secretary of the California Department of Corrections and Rehabilitation ("CDCR"), Ana Maria Mondet, a supervisor of RJD's Education Department, and Chloe Tiscornia, RJD's Facility A Librarian, who he generally alleges have interfered with his ability to litigate his complaints against CDCR employees and impeded his access to computers, provided deficient libraries, arbitrarily ordered the closure of the library, limited time inside the library, created inflexible schedules, and refused to respond to inmates requests. *See* Compl. at 4-11; FAC at 4-13; SAC at 2-12. In his SAC, he specifically alleges that Allison has used applicable regulations to "suspend library time," and to "completely shut down library facilities . . . for several consecutive months during the Covid-19 disease without making anything available in writing to attempt to substantiate the closure past 16 days." SAC at 6-7. He claims Allison has "attempted to regulate CDCR's libraries using her own personal set of 'underground regulations'" which are "designed to make successful prisoner litigation impossible." *Id.* at 7. He claims Mondet "oversees various techniques used by her codefendants, including but not limited to . . . accept[ing] being illegally ordered by CDCR to close down library program without just cause." *Id.* at 8. He further alleges that Mondet "created an inflexible schedule for inmates seeking to advance their understanding of the law," and is "impossible to correspond with." *Id.* He claims Mondet "makes no operating plan to facilitate entrance into the library," and alleges that "at any given time there are no less than 5 immovable obstacles standing in the way of physical library access," which Mondet takes no responsibility for removing, instead telling inmates to "talk to custody." *Id.* at 9. And, he

repeats his claims from his original Complaint and his FAC that Tiscornia "wrote a series of retaliatory disciplinary reports against several witnesses in this case," contends that Tiscornia had an "inconsistent approach to policies . . . depend[ing] on her mood," and used "pretextual excuses to close the library down." *Id.* at 11-12. He notes that Tiscornia "is no longer employed by RJD." *Id.* at 2.

Plaintiff has also added a new Defendant, Dorothy Nowroozian, who he alleges "joined the RJD education department shortly before the Covid-19 precautions were first put into effect." SAC at 12. Plaintiff alleges that Nowroozian "insisted [Priority Library Users] PLU inmates use the institutional mail to conduct their business such as obtaining copies and forms, receiving cases and other materials, etc." instead of using the institution's "paging" service, whereby library personnel visit inmates' cell doors and take requests for library materials." *Id.* at 13. Plaintiff claims Nowroozian failed to process Plaintiff's PLU requests and that as a result he missed a deadline for filing a petition for writ of certiorari, *Id.* at 14. Plaintiff also alleges Nowroozian has repeatedly denied Plaintiff PLU access to the library with "incoherent excuses." *Id.* at 14-15.

## III.   Screening of Complaint pursuant to 28 U.S.C. § 1915A

### A.   Standard of Review

As with Plaintiff's preceding two Complaints, the Court must conduct an initial review of Snyder's Complaint pursuant to 28 U.S.C. § 1915A, because he is a prisoner and seeks "redress from a governmental entity or officer or employee of a governmental entity." *See* 28 U.S.C. § 1915A(a). Section 1915A "mandates early review—'before docketing [] or [] as soon as practicable after docketing'—for all complaints 'in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity.'" *Chavez v. Robinson*, 817 F.3d 1162, 1168 (9th Cir. 2016). The mandatory screening provisions of § 1915A apply to all prisoners, no matter their fee status, who bring suit against a governmental entity, officer, or employee. *See, e.g. Resnick v. Hayes*, 213 F.3d 443, 446-47 (9th Cir. 2000). "On review, the court shall … dismiss the complaint, or any portion of the complaint," if it "(1) is frivolous, malicious, or fails to state a claim upon

which relief may be granted; or (2) seeks monetary relief from a defendant who is immune from such relief." *Olivas v. Nevada ex rel. Dept. of Corr.*, 856 F.3d 1281, 1283 (9th Cir. 2017) (quoting 28 U.S.C. § 1915A(b)).

### B.    Access to the Courts

As this Court has explained to Plaintiff on two preceding occasions, while prisoners have a constitutional right of access to the courts. *Lewis v. Casey*, 518 U.S. 343, 346 (1996); *Bounds v. Smith*, 430 U.S. 817, 821 (1977), *limited in part on other grounds by Lewis*, 518 U.S. at 354, in order to state a claim of a denial of the right to access the courts, a prisoner must establish that he has suffered "actual injury." *Lewis*, 518 U.S. at 349. An "actual injury" is "actual prejudice with respect to contemplated or existing litigation, such as the inability to meet a filing deadline or to present a claim." *Id.* at 348 (citation and internal quotations omitted). The right of access does *not* require the State to "enable the prisoner to discover grievances," or even to "litigate effectively once in court." *Id.* at 354; *see also Jones v. Blanas*, 393 F.3d 918, 936 (9th Cir. 2004) (defining actual injury as the "inability to file a complaint or defend against a charge"). Instead, *Lewi*s holds:

> [T]he injury requirement is not satisfied by just any type of frustrated legal claim . . . . *Bounds* does not guarantee inmates the wherewithal to transform themselves into litigating engines capable of filing everything from shareholder derivative actions to slip-and-fall claims. The tools it requires to be provided are those that the inmates need in order to attack their sentences, directly or collaterally, and in order to challenge the conditions of their confinement. Impairment of any other litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration.

*Id.* at 346; *see also Spence v. Beard*, No. 2:16-CV-1828 KJN P, 2017 WL 896293, at *2-3 (E.D. Cal. Mar. 6, 2017).

In addition to alleging an "actual injury," Plaintiff must also plead facts sufficient to describe the "non-frivolous" or "arguable" nature of underlying claim he contends was lost as result of Defendants' actions. *Christopher v. Harbury*, 536 U.S. 403, 413-14 (2002). The
/ / /

3:19-cv-01741-LAB-MDD

nature and description of the underlying claim must be set forth in the pleading "as if it were being independently pursued." *Id.* at 417.

Although Snyder does allege an "actual injury" – a missed deadline for filing a petition for writ of certiorari –  he has not explained the "non-frivolous" or "arguable" nature of his claims. *See Christopher*, 536 U.S. at 413-14. As this Court explained to Snyder in its December 5, 2019 Order dismissing his original Complaint, and in its August 3, 2020 Order dismissing his FAC, his "generalized allegations fail to state a legally plausible access to courts claim under *Lewis* because 'an inmate cannot establish relevant actual injury simply by establishing that his prison's law library or legal assistance program is subpar in some theoretical sense.'" *See* ECF No. 9 at 7; ECF No. 24 at 6, citing *Lewis*, 518 U.S. at 351. "[P]rison law libraries and legal assistance programs are not ends in themselves," and *Lewis* makes clear that courts must "leave it to prison officials to determine how best to ensure that inmates…have a reasonably adequate opportunity to file nonfrivolous legal claims challenging their convictions or conditions of confinement." *Id.* at 356. "[I]t is that capability, rather than the capability of turning pages in a law library that is the touchstone." *Id.* at 357.

C.   Retaliation

Snyder's allegations of retaliation against Defendant Tiscornia is also the same as the allegations he made in his FAC which this Court dismissed because he had failed to state a claim. *See* Order, ECF No. 24 at 6-8. As this Court informed Plaintiff in its August 3, 2020 Order, to state a valid First Amendment retaliation claim, Snyder must assert: (1) a state actor took some adverse action against him, (2) the adverse action was taken because he engaged in some protected conduct, (3) his First Amendment rights were chilled and (4) the adverse action "did not reasonably advance a legitimate correctional goal." *Rhodes v. Robinson*, 408 F.3d 559, 567-68 (9th Cir. 2005). Although Snyder alleges a state actor (Tiscornia) took some adverse action against him (filed a disciplinary report), because he engaged in protected conduct (to punish him for complaining to her supervisor), *see* SAC at 12, he has not made a sufficient showing that his First Amendment rights were chilled

or that the disciplinary report did not "reasonably advance a legitimate correctional goal." *Rhodes*, 408 F.3d at 567-68. The allegations he makes against the new Defendant

## IV.    Conclusion and Orders

For the reasons explained, the Court **DISMISSES** Plaintiff's Second Amended Complaint [ECF No. 28] for failing to state a claim upon which relief may be granted pursuant to 28 U.S.C. § 1915A(b). Because amendment would be futile, the dismissal is without leave to amend.

**IT IS SO ORDERED**.

Dated: January 8, 2021

Hon. Larry Alan Burns
Chief Judge, United States District Court

3:19-cv-01741-LAB-MDD